UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TENNYSON B.,

Plaintiff,

v.

KILOLO KIJAKAZI,

Defendant.

Case No. 22-cv-06595-SI

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 18

Now before the Court are cross-motions for summary judgment in this Social Security appeal. Dkt. Nos. 16, 18. For the reasons set forth below, the Court GRANTS plaintiff's motion, DENIES defendant's motion, and REMANDS this case for further administrative proceedings consistent with this Order.

## BACKGROUND

### I. Procedural History

On August 26, 2019, plaintiff Tennyson B.[1] filed an application for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act, alleging a disability onset date of May 1, 2016. Administrative Record ("AR") 79. On December 4, 2019, the Social Security Administration (the "agency" or "SSA") initially denied plaintiff's claim. AR 86. On January 27, 2021, following the reconsideration level of review, the agency found plaintiff was

[1] The Court partially redacts plaintiff's name to mitigate privacy concerns, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See also* Fed. R. Civ. P. 5.2(c)(2)(B).

disabled, with an onset date of January 6, 2020. AR 71-72, 97. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") solely to challenge the disability onset date, arguing that his disability began several years earlier, on May 1, 2016. AR 109-110.

Following the hearing, the ALJ issued a written decision finding plaintiff was not disabled within the meaning of the Social Security Act, at any time from May 1, 2016, through September 30, 2021, the date last insured. AR 16, 22-23. On September 6, 2022, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1-3. Plaintiff then filed this action for judicial review pursuant to 42 U.S.C. § 405(g). *See* Dkt. No. 1. The parties have cross-moved for summary judgment. Dkt. Nos. 16, 18.

**II. Medical History**

On September 28, 2021, the date of the administrative hearing, plaintiff was a sixty-six-year-old male with a high school education. AR 33. Plaintiff had past work as a provision agent, steelworker, and union representative. AR 34. In his application, plaintiff alleged disability based on "a combination of impairments including degenerative disc disease of the cervical and lumbar spine with radiculopathy and gout." Dkt. No. 16 at 5; AR 48. Since the alleged onset date of May 1, 2016, plaintiff regularly visited the medical center operated by Kaiser Permanente to treat his neck, head, and back pain, and occasionally shoulder pain. Plaintiff's primary care physician was Dr. Yang Michelle Sun. Plaintiff also visited Dr. Anatoliy Fortenko for back and neck pain and had two visits with Dr. Calvin Kuo regarding possible surgery.

On May 1, 2016, plaintiff sustained an injury when he fell backwards while cleaning his pool, hitting his lower back on pool cement as well as his head. AR 549. The following day, plaintiff visited Kaiser Permanente's medical center, where Dr. Sara Eskandari Larkin opined that the fall contused and aggravated plaintiff's known degenerative joint disease. AR 550. Within the month, plaintiff visited the medical center several times for neck and arm pain, but physical examinations showed no acute findings or abnormalities. AR 528-548. Despite this, plaintiff felt his pain worsening, and he stated he was unable to work. AR 536.

On June 21, 2016, plaintiff's X-ray showed "[m]ultilevel degenerative changes seen within

the lumbar spine," and Dr. Fortenko noted plaintiff walked with a cane and had an antalgic gait. AR 534-535. On July 20, 2016, plaintiff received lumbar facet injections to treat his back pain. AR 529. Medical notes from a December 2016 doctor's visit list "standing, sitting, bending, lifting and driving" as aggravating factors for plaintiff's pain. AR 518.

On February 14, 2017, plaintiff lacerated his right hand when a window broke. AR 517. A week later, plaintiff underwent surgery to repair his right finger extensor tendon laceration. AR 501. On September 14, 2017, plaintiff underwent another surgery to repair extensor tendon and joint contracture in his right small finger. AR 452.

On October 10, 2017, Dr. Fortenko suggested surgical review after diagnosing plaintiff with spinal stenosis of the cervical spine. AR 443. A week later, plaintiff saw Dr. Kuo for a consultation at the spine clinic. AR 438. Dr. Kuo conducted a physical examination and found plaintiff walked with a slight shuffle, and was unable to toe-heel or tandem walk. AR 440. Plaintiff reported to Dr. Kuo that his gait had slowed and he was using a cane for balance more often. AR 439.

In January 2018, plaintiff informed Dr. Fortenko that he did not feel he could return to work and he wanted to apply for long term disability. AR 425. Dr. Fortenko placed plaintiff on modified activity from January 8, 2018, through May 31, 2018, restricting plaintiff to intermittent standing and walking ("up to 50% of shift") and occasional bending and twisting ("up to 25% of shift"). AR 1154. Dr. Fortenko also opined that "[i]f modified activity is not accommodated by the employer then [plaintiff] is considered temporarily and totally disabled from their regular work for the designated time and a separate off work order is not required." *Id.*

In January 2019, Dr. Fortenko again placed plaintiff on modified activities, from February 1, 2019, through July 31, 2019. AR 1164. Dr. Fortenko again restricted plaintiff to intermittent standing and walking (up to 50% of shift) and occasional bending and twisting (up to 25% of shift). *Id.* On October 17, 2019, physical therapist Mark Van Riper evaluated plaintiff and noted that "[p]atient ha[d] factors of C5-7 cervical fusion, weak lumbo pelvic musculature, and overactive musculature of the low back which [were] contributing to [plaintiff's] pain symptoms." AR 389. The physical therapist noted plaintiff was "progressing towards goals" and that the prognosis "for full recovery to premorbid levels of function at this time is good." *Id.*

On January 6, 2020, plaintiff visited Dr. Sun for left shoulder pain, stating that the pain had been worsening for three months since he got a flu shot and that it was hard to lift his left arm above the shoulder. AR 667. Dr. Sun diagnosed plaintiff with a left rotator cuff tear; a follow-up MRI showed "[n]o evidence of full-thickness rotator cuff tendon tear." AR 668, 684. On January 21, 2020, plaintiff had additional lumbar facet injections to treat his lower back pain. AR 666. On September 28, 2020, Dr. Fortenko diagnosed plaintiff with spinal stenosis of the cervical spine and noted the symptoms included neck and arm pain, balance issues, low back pain, and numbness in both legs. AR 874. In early August 2020, plaintiff tested positive for COVID-19. AR 800.

On November 6, 2020, plaintiff had a video visit with Dr. Kuo in the orthopaedic spine surgery department. AR 944. Dr. Kuo diagnosed plaintiff with C4-5 stenosis with myelopathy, gradually progressing since 2017. AR 946. Dr. Kuo noted plaintiff's condition left him reliant on a cane at all times. AR 944. Dr. Kuo explained to plaintiff the risks of the procedure and noted that the "patient understands the urgency of operative intervention." AR 946. At the time, plaintiff felt he was still recovering from COVID-19 and so wanted to schedule the surgery in January 2021. *Id*. There are no records confirming plaintiff scheduled the surgery, although plaintiff underwent an endoscopy in mid-January 2021. *See* AR 1000.

## III. Prior Agency Proceedings

On December 3, 2019, as part of the SSA's determination of plaintiff's disability application at the initial level, Dr. Steven Kao concluded that "[plaintiff] should be capable of a light [residual functional capacity with] postural limits and manipulative limits . . . ." AR 50. This included a finding that plaintiff had "limited" ability to reach overhead with either arm. AR 52. The agency concluded plaintiff could perform his past relevant work and was not disabled. AR 54.

At the reconsideration level, Dr. Laurence Tanaka agreed with the residual functional capacity assigned, with an onset date of January 6, 2020. AR 62. State agency disability adjudicator R. Montague then determined that, at the prior (initial) level of review, the medical-vocational analysis "was not done correctly (or at all)." AR 69. After lengthy analysis and some communication with plaintiff to clarify his past relevant work, the adjudicator determined that

United States District Court
Northern District of California

plaintiff could not perform his past relevant work, as done in the national economy or as described. AR 70. Therefore, plaintiff was found disabled, with an onset date of January 6, 2020.

**IV. ALJ's Decision**

Plaintiff requested a hearing before an ALJ, arguing that his disability onset date was May 1, 2016. *See* AR 15. ALJ Kevin Gill held a hearing on September 28, 2021. *Id.* Plaintiff was represented by counsel.[2] *Id.* Vocational Expert ("VE") Laurence S. Hughes also testified. *Id.* On October 15, 2021, the ALJ issued a decision finding plaintiff was not disabled at any time from May 1, 2016, the alleged onset date, through September 30, 2021, the date last insured.[3] AR 23.

The ALJ applied the five-step disability analysis set forth by 20 C.F.R. § 404.1520(a). At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date, May 1, 2016. AR 17-18. At step two, the ALJ found plaintiff suffered from severe impairments: spine disorder; and shoulder dysfunction beginning in 2019. AR 18. At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ specifically considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)) and 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina). *Id.*

The ALJ determined plaintiff had the residual functional capacity to perform "light work as defined by 20 CFR 404.1567(b) except he could occasionally reach overhead with the bilateral upper extremities, could occasionally climb ramps and stairs, could never climb ladders, ropes, or scaffolds, and could occasionally stoop, kneel, crouch, and crawl." AR 19. The ALJ did not dispute the residual functional capacity assigned by Dr. Kao or Dr. Tanaka at the agency initial and reconsideration levels. AR 21. "The issue," the ALJ went on, "is whether the residual functional

---

[2] The same counsel now represents plaintiff in this appeal.

[3] The Court notes that in the procedural history, the ALJ's written decision contains several errors. The decision stated, incorrectly, that plaintiff's "claim was denied initially on December 4, 2019, *and upon reconsideration on January 27, 2021*." *See* AR 15 (emphasis added). The decision also stated incorrectly that "[t]he claimant was awarded benefits . . . after initially alleging disability *beginning January 6, 2020* (Exhibit 10B)." *See id.* (emphasis added). Plaintiff has consistently maintained that his disability onset date was May 1, 2016. *See* AR 48, 57, 79.

capacity noted by both Dr. Kao and Dr. Tanaka precludes past relevant work. The undersigned finds that it does not, thereby reversing the DDS reconsideration decision to award benefits in January 2020 based on Rule 202.06." *Id.*

At step four, the ALJ found plaintiff could perform his past relevant work as a contract clerk and business representative. AR 22. The ALJ found the VE testimony "persuasive in finding that a limitation to occasional overhead reaching with the bilateral upper extremities would not preclude the claimant's past relevant work . . . ." *Id.* The ALJ went on to state that "[t]he undersigned also reviewed the job positions and noted the jobs require reaching forward and down but not upward." *Id.* The ALJ further stated the positions were performed at desk height and included "reviewing and analyzing contracts and agreements, preparing agreements etc." *Id.* "Therefore, the apparent conflict in the DOT [Dictionary of Occupational Titles] in regards to reaching is not an actual conflict." *Id.* Accordingly, the ALJ found plaintiff was not disabled as defined in the Social Security Act, at any time from May 1, 2016, the alleged onset date, through September 30, 2021, the date last insured. *Id.* The ALJ therefore found plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. *Id.*

## LEGAL STANDARDS

### I. Standard of Review

The Social Security Act authorizes judicial review of final decisions made by the Commissioner. 42 U.S.C. § 405(g). Here, the decision of the ALJ stands as the final decision of the Commissioner because the Appeals Council declined review. 20 C.F.R. § 416.1481. The Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001). The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at

1098. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks and citations omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098 (citation omitted). "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

**II. Disability Benefits**

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months[,]" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(A)-(B). The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The claimant has the burden of proof for steps one through four and the Commissioner has the burden of proof for step five. *Tackett*, 180 F.3d at 1098.

The five steps of the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the

> past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. *Tackett*, 180 F.3d at 1098 n.3.

In between the third and fourth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), (e), 416.945(a)(5)(i). To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work. *Id.* §§ 404.1545(a)(4), 416.945(e). The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record. *Id*. The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability. *Id*. In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms. *Id*. When evaluating intensity and persistence, the ALJ must consider all the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her. *Id*. The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements. *Id.* §§ 404.1529(c)(2), 416.929(c)(2). The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(i)-(vii). After determining the RFC, the ALJ proceeds to steps four and five of the disability inquiry.

United States District Court
Northern District of California

**DISCUSSION**

**I. Medical Opinions**

Plaintiff argues the ALJ erred by failing to properly assess the medical opinions of treating physicians Dr. Fortenko and Dr. Kuo.

For applications filed on or after March 27, 2017, such as here, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Under the revised regulations, 20 C.F.R. § 404.1502c, "an ALJ no longer needs to make specific findings regarding [the] relationship factors[.]"[4] *Id.* at 792. The most important factors, now, are: 1. supportability ("the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence"); and 2. consistency ("the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim"). *Id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1), (2)) (internal alterations omitted). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792. "The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source." *Id.* at 791 (citing 20 C.F.R. § 404.1520c(b) (internal quotation marks omitted)).

**A. Dr. Fortenko**

Plaintiff argues the ALJ erred in failing to provide substantial evidence for implicitly rejecting Dr. Fortenko's medical opinion. Dkt. No. 16 at 19. The Court agrees, given that the ALJ's decision does not address Dr. Fortenko's opinion at all.

Dr. Fortenko was a treating provider whom plaintiff saw numerous times over a period of

[4] The relationship factors remain relevant "when assessing the persuasiveness of the source's opinion." *Woods*, 32 F.4th at 792. In assessing the relationship, the ALJ may consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the specialization of the treating physician. 20 C.F.R. § 404.1520c(c).

United States District Court
Northern District of California

several years. Dr. Fortenko opined that plaintiff needed to be placed on modified activity from January 8, 2018, through May 31, 2018, and again from February 1, 2019 through July 31, 2019. AR 1154, 1164. During these periods, Dr. Fortenko opined that plaintiff could stand or walk up to fifty percent of a shift and could bend and twist up to twenty-five percent of a shift. *Id*. The RFC that the ALJ assigned plaintiff (light work, with modifications) is inconsistent with Dr. Fortenko's findings, in that "light work" contemplates up to six out of eight hours of standing per day, and up to six out of eight hours of walking per day. *See* AR 19, 43; *see also* SSR 83-10, *available at* 1983 WL 31251, at *5-6.

Defendant acknowledges the ALJ failed to address Dr. Fortenko's medical opinions but contends the ALJ did not err. Dkt. No. 18 at 8. Defendant argues that Dr. Fortenko's medical opinion does not show that plaintiff had a disability for a continuous period of twelve months, as required by the regulations, given that Dr. Fortenko's work status reports covered the periods from January-May 2018 and February-July 2019, with an eight-month gap in between. *Id.*

The Court is not persuaded by defendant's argument. The eight-month gap in Dr. Fortenko's work status reports is neither something that the ALJ questioned plaintiff about nor a reason that the ALJ himself relied on in the decision. Moreover, nothing in the record suggests plaintiff improved during that period. In a telephone visit with Dr. Fortenko in early June 2018, plaintiff reported that he was unable to return to work and was planning to retire in November. AR 416. In late July 2018, plaintiff saw his primary care doctor, Dr. Sun, reporting that he had had recurrent low back pain for twelve days. AR 414. Dr. Sun referred plaintiff for physical therapy. AR 411. In late August 2018, plaintiff began an eight-week course of physical therapy. AR 412. One of the "lumbar spine goals" for the physical therapy was that plaintiff would "be able to tolerate sitting, and/or driving for 60 minutes within 8 Week(s)." AR 411.

The Court finds the ALJ erred by failing to address Dr. Fortenko's medical opinions, and the error was not harmless. The ALJ is required to articulate how persuasive he finds all of the medical opinions in the case record. 20 C.F.R. § 404.1520c(b). Here, the failure to address Dr. Fortenko's opinion regarding plaintiff's limitations and his inability to work without certain restrictions is particularly concerning, given that Dr. Fortenko treated plaintiff specifically for neck

and low back pain, which forms one of the primary bases for plaintiff's SSDI claim.

**B. Dr. Kuo**

Plaintiff further argues the ALJ erred because he "did not address the limitations Dr. Kuo assessed or provide any rationale for failing to include these limitations in the hypothetical to the VW or in the RFC finding." Dkt. No. 16 at 20-21. Specifically, plaintiff argues that "Dr. Kuo noted that activities which worsened [plaintiff's] symptoms included looking up, turning the head to the right and left, bending forward, leaning back, twisting his torso to the right, sitting, standing, and walking." *Id*. at 20 (citing AR 947). Defendant argues that what plaintiff cites were not actually Dr. Kuo's "medical opinions," and so the ALJ did not need to address them at all. Dkt. No. 18 at 9. Defendant contends Dr. Kuo's records "did not state any limitation or state what [p]laintiff [could] do," but rather, Dr. Kuo simply recorded plaintiff's subjective symptoms. *Id*.

The Court agrees with defendant's reading of the record. Social Security regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the demands of work. 20 C.F.R. § 404.1513(a)(2). The portion of the record that plaintiff cites as a medical opinion, AR 947, appears rather to be a list of plaintiff's limitations as reported to Dr. Kuo during a surgical consult in November 2020. It does not appear to be a statement *from Dr. Kuo* regarding plaintiff's limitations, as plaintiff contends. While the ALJ was entitled to consider plaintiff's visit with Dr. Kuo in weighing the overall evidence in the record, the Court does not find that the ALJ erred in not evaluating Dr. Kuo's "medical opinion" because the record does not contain a medical opinion as described by 20 C.F.R. § 404.1513(a)(2).

**II. Vocational Expert's Testimony**

Prior to the ALJ hearing, the SSA found plaintiff disabled as of January 6, 2020, based on the conflict between his RFC and the requirements of the jobs he had previously performed. In particular, the agency adjudicator found that plaintiff could not return to his past relevant work as a business representative for a labor union "because his RFC limits reaching to OCCS [occasional]

and this job req[uires] freq[uent]." AR 70. When plaintiff appealed to the ALJ, challenging his disability onset date, the ALJ found at step four that "[t]he vocational expert confirmed that with the residual functional capacity described above . . . the claimant could perform his past relevant work as a contract clerk and business representative." AR 22.

It is important to note that the plaintiff was assigned the same RFC at the initial, reconsideration, and ALJ levels of review. The critical turning point for plaintiff's case therefore came at step four, where the agency inquired whether plaintiff could perform his past relevant work.

Plaintiff now contends that the ALJ erred by not properly resolving the discrepancy between the VE's testimony and the requirements of his past relevant work as listed in the Dictionary of Occupational Titles. Dkt. No. 16 at 13, 15-16. Furthermore, plaintiff argues the ALJ improperly assumed the role of a VE when, in the written decision, the ALJ "not[ed] that the ALJ himself had reviewed the job descriptions for the identified jobs and determined on his own that they required reaching forward and down but not upward." *Id.* at 14 (citing AR 22).

Social Security Ruling 00-4p "provides that the adjudicator *will ask* the vocational expert if the evidence he or she has provided is consistent with the *Dictionary of Occupational Titles* and obtain a reasonable explanation for any apparent conflict." *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (quoting Social Security Ruling 00-4p, *available at* 2000 WL 1898704, at *4) (internal quotation marks omitted). The conflict must be "obvious or apparent," such that the VE's testimony is at odds with the Dictionary's listing of job requirements that are "essential, integral, or expected." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (quoting *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016)). Where the conflict between the DOT and the VE's testimony is "obvious or apparent," the ALJ's obligation to inquire further is triggered. *Id.* The Ninth Circuit has explained that "[t]o avoid unnecessary appeals, an ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC." *Id.* Social Security Ruling 00-4p gives examples for what a "reasonable explanation" may constitute: for instance, where the VE "can include information not listed in the DOT" or where the VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p, *available at* 2000 WL 1898704, at *2-3.

Here, defendant does not dispute that plaintiff's past relevant work as a contract clerk and business representative required frequent reaching, and that plaintiff's RFC limited him to "occasional" reaching. At the hearing, the VE testified that an individual with plaintiff's RFC could perform the work of contract clerk and union rep (business representative). AR 43-44. The ALJ presented a second hypothetical with further limitations, and the VE testified that someone with those limitations could not perform those past jobs.[5] AR 44. The ALJ then asked:

> ALJ: . . . And has your testimony been consistent with the DOT?
>
> VE: Well, the DOT doesn't talk about directionality of reaching, for instance. I've used my experience to form that opinion, but otherwise, yes.
>
> ALJ: All righty. Thank you. . . .

AR 44.

The Court finds the ALJ erred at step four by not following Social Security Ruling 00-4p. While SSRs do not carry the force of law, they are still binding on the ALJ. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1124 (9th Cir. 2009). Under the circumstances presented here, the Court finds there was an obvious and apparent conflict between the requirements listed in the DOT for plaintiff's past relevant work and the VE's testimony that someone limited to "occasional" overhead reaching could perform those jobs. The ALJ erred by not eliciting a "reasonable explanation" for the conflict before relying on the VE's testimony. *See* SSR 00-4p, 2000 WL 1898704, at *1. The failure of the ALJ to follow Social Security Ruling 00-4p is particularly important in this case, where the SSA previously found plaintiff disabled based on this very conflict. *See* AR 70. The VE's cursory explanation that the conflict could be resolved based on "my experience," without further elicitation from the ALJ, was not a "reasonable explanation" under Social Security Ruling 00-4p. It appears, in fact, that the ALJ tried to bridge this gap in the written decision, in stating, "[t]he undersigned also reviewed the job positions and noted that the jobs require reaching forward and down but not upward." *See* AR 22. The Court agrees with plaintiff that it

[5] The limitations in the second hypothetical included reaching occasionally in all directions on the right, and occasional handling and fingering on the right, where the right hand was the dominant hand. AR 44.

was improper for the ALJ to refer to his own research of "the job positions," from an unnamed source, rather than by obtaining testimony from the VE at the hearing. *See Burkhart v. Bowen*, 856 F.2d 1335, 1341 (9th Cir. 1988) (finding the ALJ erred where he based his "speculations" about other work the claimant could perform "upon information outside the record" and thus "effectively deprived [the claimant] of an opportunity to cross-examine a witness or rebut testimony").[6]

**III. Plaintiff's Symptom Testimony**

Plaintiff also argues the ALJ erred in assessing plaintiff's symptom testimony. In particular, plaintiff argues that the ALJ did not consider his testimony indicating "that he has pain in his neck and back which radiates into both of his arms and both of his legs" and that "[t]hese issues have resulted in problems carrying items, using his hands for keyboarding, turning his head to look at the computer screen, and sitting for long periods of time." Dkt. No. 16 at 23 (citing AR 37-39).

An ALJ must engage in a two-step analysis to evaluate the testimony of a claimant regarding subjective symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). In other words, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th

[6] The Court is not persuaded by defendant's position that plaintiff waived this argument by not raising it at prior administrative levels. The Ninth Circuit has made clear that "an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises the conflict before the agency." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (citing SSR 00-4p; *Lamear*, 865 F.3d at 1206-07; *Massachi*, 486 F.3d at 1152-54).



United States District Court
Northern District of California

1   Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014)).

2         The Court agrees with plaintiff that the ALJ's apparent rejection of plaintiff's symptom testimony was neither sufficiently specific nor supported by clear and convincing reasons.[7] The ALJ's "findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345-46 (internal quotation marks and citation omitted). Here, it is unclear from the ALJ's decision which testimony the ALJ was rejecting, and based on which facts in the record. For instance, at one point, the ALJ cited to exhibits 1F, 2F, and 3F, which total more than 750 pages of medical records spanning 2016 to 2020. *See* AR 22. Additionally, the ALJ stated that plaintiff was "being treated with conservative measures such as physical therapy, medications, injections, and acupuncture. . ." AR 22. Yet medical records show medication and acupuncture were not improving plaintiff's symptoms. *See, e.g.*, AR 472, 491, 518, 529, 533; *see also Gonzalez v. Astrue*, No. C-10-04570 EDL, 2012 WL 424403, at *13 (N.D. Cal. Feb. 9, 2012) (finding the ALJ had not provided clear and convincing reasons for rejecting the plaintiff's pain testimony when the plaintiff had testified that conversative treatments did not alleviate pain). And to the extent that the ALJ rejected

---

[7] The ALJ wrote, in relevant part:

> . . . the claimant's attorney submitted a brief that confirms that while the claimant developed shoulder pain in October 2019, it was not until January 6, 2020, that it became a "major issue" when he was diagnosed with left RCS (Exhibit 19E). However, the records only confirm some reduction in motion and some left rotator cuff weakness (Exhibit 2F/4, 6). While the claimant experiences neck and back pain, exams consistently document intact sensation and strength, a normal gait, and normal reflexes with the claimant being treated with conservative measures such as physical therapy, medications, injections, and acupuncture (Exhibits 1F; 2F; 3F), and thus far, the claimant has not undergone additional surgery. The undersigned is in no way implying that the claimant does not experience some limitations due to his impairments. However, the limitations alleged by the claimant that find support within the objective medical record have been accommodated for by the above residual functional capacity assessment.

AR 22.

plaintiff's symptom testimony because plaintiff had not yet undergone the surgery recommended by Dr. Kuo, the Court notes that nothing in the record shows why the surgery did not take place, and the ALJ did not ask about this at the hearing. The ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered[,]" *see Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001), and so the ALJ should have inquired before using the lack of surgery as grounds to reject the plaintiff's testimony.

In short, the Court finds that the ALJ's rejection of plaintiff's symptom testimony did not comport with the "demanding" standard required in the Ninth Circuit. *See Trevizo*, 871 F.3d at 678. As the Court is remanding this matter for further proceedings based on errors in the evaluation of Dr. Fortenko's opinion and in the VE testimony, the Court finds it is also appropriate for the ALJ to revisit plaintiff's symptom testimony, for the reasons stated above.

## IV. Remand for Further Proceedings

The Court declines to remand this case for immediate payment of benefits. As plaintiff essentially concedes in his reply brief, Dkt. No. 19 at 11, remand for further proceedings is the more appropriate course here. *See Trevizo*, 871 F.3d at 682 ("The decision whether to remand a case for additional evidence, or simply award benefits[,] is within the discretion of the court.") (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).

On remand, the ALJ shall reevaluate the medical opinions of Dr. Fortenko, in accordance with 20 C.F.R. § 404.1502c. The ALJ shall also reevaluate plaintiff's symptom testimony. If the ALJ rejects plaintiff's testimony, the ALJ may do so only by providing clear and convincing reasons supported by substantial evidence in the record, stating "specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *See Smolen*, 80 F.3d at 1284. Because the medical opinions and the symptom testimony necessarily impacted the RFC, the ALJ shall also re-visit the RFC finding and the remaining steps of the five-step disability inquiry. The ALJ shall hold a rehearing to further develop the record and to elicit additional VE testimony. If any conflict remains between the VE testimony and the DOT, the ALJ shall resolve the conflict in accordance with Social Security Ruling 00-4p.

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment (Dkt. No. 16) and DENIES defendant's cross-motion for summary judgment (Dkt. No. 18). The Court REMANDS this case for further administrative proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.

Dated: November 7, 2023

SUSAN ILLSTON
United States District Judge